**WINE HOBBY USA, INC.**

v.

**UNITED STATES INTERNAL REVENUE SERVICE.**

Appeal of UNITED STATES BUREAU OF ALCOHOL, TOBACCO AND FIREARMS.

No. 73-2072.

United States Court of Appeals, Third Circuit.

Submitted May 30, 1974.

Decided Aug. 19, 1974.

Irving Jaffe, Acting Asst. Atty. Gen., Robert E. J. Curran, U. S. Atty., David M. Cohen, Meyer Rothwacks, Scott P. Crampton, Appellate Section, Tax Div., U. S. Dept. of Justice, Washington, D. C., for appellant.

James G. Watt, Butz, Hudders & Tallman, Allentown, Pa., for appellee.

Before KALODNER, ROSENN and HUNTER, Circuit Judges.

## OPINION OF THE COURT

ROSENN, Circuit Judge.

This appeal requires us to consider the "invasion of privacy" exemption to the Freedom of Information Act, 5 U.S. C. § 552. Plaintiff, Wine Hobby USA, Inc. (Wine Hobby), a Pennsylvania corporation, brought suit to obtain the names and addresses of all persons who have registered with the United States Bureau of Alcohol, Tobacco and Firearms to produce wine for family use in the Mid-Atlantic region.[1] The district court ordered that the names and addresses be disclosed.[2] The Government appeals, contending

(1) that the material sought is exempt from compulsory disclosure under Exemption (6) to the Act, § 552(b) (6), which excludes from the Act's coverage "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy," and

(2) alternatively, that the district court possesses equitable jurisdiction to decline to order disclosure in the circumstances of this case.

Under the Internal Revenue Code and the Federal Alcohol Administration Act, persons who produce wine are subject to certain permit, bonding, and tax requirements.[3] Criminal penalties are provided for noncompliance.[4] An exception to these requirements is provided by statute in the case of a "duly registered head of any family" who produces "for family use and not for sale an amount of wine not exceeding 200 gallons per annum."[5]

Pursuant to regulations,[6] registration under the statutory exception is effected by filing Form 1541 with the Bureau of Alcohol, Tobacco and Firearms. Upon determination that the person is qualified, Form 1541 is stamped, one copy is returned to the registrant and the remaining copy is placed in the Bureau's files. Records of the Bureau indicate that in fiscal year 1973, 64,756 Forms 1541 were filed, including 2,846 in the Mid-Atlantic region. In fiscal year 1974, as of February 1974, 41,585 Forms 1541 were on file, including 4,000 in the Mid-Atlantic region.

Wine Hobby is engaged in the business of selling and distributing amateur winemaking equipment and supplies to amateur winemakers through franchises, wholly owned retail stores, and by mail order. Wine Hobby has stipulated in the district court that its purpose in obtaining the names and addresses of the Form 1541 registrants is "to enable plaintiff to forward catalogues and other announcements to these persons regarding equipment and supplies that the plaintiff offers for sale."[7]

---

1. The parties have stipulated in the district court that Wine Hobby has exhausted its administrative remedies.

2. The district court's opinion is reported at 363 F.Supp. 231 (E.D.Pa.1973). The court stayed its disclosure order pending this appeal.

3. 26 U.S.C. §§ 5041(a), (d); 5043(a), (b); 27 U.S.C. § 203(b) (1).

4. 26 U.S.C. §§ 5661(a), 5687; 27 U.S.C. § 207.

5. 26 U.S.C. § 5042(a) (2).

6. 26 C.F.R. §§ 240.540–543. The regulation provide that an individual is deemed to be the head of a family "only if he exercises family control or responsibility over one or more individuals closely connected with him by blood relationship, relationship by marriage, or by adoption, and who are living with him in one household." The exemption does not apply to, *inter alia*, "wine produced by a single person unless he is the head of a family" or "wine produced by a married man living apart from his family."

7. Wine Hobby has declined to participate in this appeal, either in filing briefs or participating in oral argument.

■ We begin with the recognition that the Freedom of Information Act, enacted to remedy the inadequacies of its predecessor, section 3 of the Administrative Procedure Act, 5 U.S.C. § 1002 (1964):

is broadly conceived. It seeks to permit access to official information long shielded unnecessarily from public view and attempts to create a judicially enforceable public right to secure such information from possibly unwilling official hands.

Environmental Protection Agency v. Mink, 410 U.S. 73, 80, 93 S.Ct. 827, 35 L.Ed.2d 119 (1973). The Act was intended to provide "the necessary machinery to assure the availability of Government information necessary to an informed electorate." [8] An integral part of the Act, however, is the nine enumerated exceptions. As the Senate Committee pointed out in its report:

At the same time that a broad philosophy of "freedom of information" is enacted into law, it is necessary to protect certain equally important rights of privacy with respect to certain information in Government files, such as medical and personnel records. It is also necessary for the very operation of our Government to allow it to keep confidential certain material, such as the investigatory files of the Federal Bureau of Investigation.

Senate Report No. 813, 89th Cong., 1st Sess. 3 (1965) (hereinafter "S.Rep.").

■ The Government relies on Exemption (6) as the basis for refusing to supply the information requested by Wine Hobby. The district court reluctantly concluded that despite the potential for abuse, the names and addresses sought here were not subject to this exemption as an invasion of privacy. The court also held that it had no power to exercise its equitable discretion to withhold and no alternative but to grant the request. We hold that the names and addresses sought are within the exemption and we therefore reverse.

To qualify under Exemption (6), the requested information must consist of "personnel, medical or similar files," and the disclosure of the material must constitute a "clearly unwarranted invasion of personal privacy."

We believe that the list of names and addresses is a "file" within the meaning of Exemption (6). A broad interpretation of the statutory term to include names and addresses is necessary to avoid a denial of statutory protection in a case where release of requested materials would result in a clearly unwarranted invasion of personal privacy. Since the thrust of the exemption is to avoid unwarranted invasions of privacy, the term "files" should not be given an interpretation that would often preclude inquiry into this more crucial question.[9]

■ Furthermore, we believe the list of names and addresses is a file "similar" to the personnel and medical files specifically referred to in the exemption. The common denominator in "personnel and medical and similar files" is the personal quality of information in the file, the disclosure of which may constitute a clearly unwarranted invasion of personal privacy. We do not believe that the use of the term "similar" was intended to narrow the exemption from disclosure and permit the release of files which would otherwise be exempt because of the resultant invasion of privacy.

We now turn to the Government's contention that disclosure of the names and addresses to Wine Hobby would result in a "clearly unwarranted invasion of personal privacy." Because of an apparent

8. H.Rep.No.1497, 89th Cong. 2d Sess. (1966), reproduced, 1966 U.S.Code, Cong. & Admin. News, pp. 2418, 2429 (nereinafter "H.Rep.").

9. For example, were purchasers of contraceptives required to register with the Government, and were a plaintiff to request disclosure of the names and addresses of such registrants, a narrow construction of "files" would require disclosure by preventing inquiry into the invasion of privacy which would result from disclosure.

conflict in the circuits,[10] we must first consider whether the statutory language, which clearly demands an examination of the invasion of privacy, also requires inquiry into the interest in disclosure.

■ Our examination of the statute and its legislative history leads us to conclude, in the language of the District of Columbia Circuit, that "Exemption (6) necessarily requires the court to balance a public interest purpose for disclosure of personal information against the potential invasion of individual privacy." Getman v. N.L.R.B., 450 F.2d at 677 n. 24 (1971).[11] On its face, the statute, by the use of term "unwarranted," compels a balancing of interests. The interpretation, moreover, is supported by the legislative history.[12]

We disagree with the view of the Fourth Circuit that the language of § 552(a)(3) precludes a balancing of interests to determine the application of Exemption (6).[13] That paragraph which amended a provision of section 3 of the Administrative Procedure Act which required that the plaintiff be "properly and directly concerned," authorizes release of information to "any person." The Fourth Circuit apparently construed the amendment to prevent an inquiry into the purpose asserted by an individual plaintiff. Significantly, however, the paragraph applies only to matters not within any of the exemptions enumerated in § 552(b). Thus it is only *non-exempt* material that must be made available to "any person." [14] We see nothing in § 552(a)(3) therefore that precludes balancing to determine whether particular information is within a statutory *exemption*.

■ To apply the balancing test to the facts of this case we must determine whether release of the names and addresses would constitute an invasion of personal privacy and, if so, balance the seriousness of that invasion with the purpose asserted for release. Getman v. N.L.R.B., *supra*. Turning to the first consideration, we conclude that disclosure would involve an invasion of privacy. As the Government points out in its brief, there are few things which per-

---

10. Compare Getman v. N.L.R.B., 146 U.S. App.D.C. 209, 450 F.2d 670 (1971), and Rose v. Dept. of the Air Force, 495 F.2d 261 (2d Cir. 1974), with Robles v. Environmental Protection Agency, 484 F.2d 843 (4th Cir. 1973). *See also* Note, Invasion of Privacy and the Freedom of Information Act: Getman v. N.L.R.B., 40 Geo.Wash.L. Rev. 527 (1972).

11. In *Getman*, the court considered the application of Exemption (6) to a request by two labor law professors for the lists of names and home addresses of employees eligible to vote in representation elections. The professors were engaged in a study of N.L.R.B. representation election rules and intended to use the employee lists to facilitate the scheduling of interviews with affected employees. The court held the employee lists disclosable, finding that disclosure for the purpose of the professors' study was "if anything . . . clearly warranted."

12. The Senate Report provides (at 9):
The phrase "clearly unwarranted invasion of personal privacy" enunciates a policy *that will involve a balancing of interests* between the protection of an individual's private affairs from unnecessary public scrutiny, and the preservation of the public's right to governmental information. The application of this policy should lend itself particularly to those Government agencies where persons are required to submit vast amounts of personal data usually for limited purposes. . . . [Emphasis supplied.]

13. Robles v. Environmental Protection Agency, 484 F.2d 843 (4th Cir. 1973).
In *Robles*, plaintiffs sought the names and addresses of persons who occupied buildings which had been monitored by the E.P.A. for radiation levels and possible radioactive emissions. The court held Exemption (6) inapplicable and ordered disclosure.

14. The Senate Report provides (at 5–6):
[The proposed Act] eliminates the test of who shall have the right to different information. For the great majority of different records, the public as a whole has a right to know what its Government is doing. There is, of course, a certain need for confidentiality in some aspects of Government operations and these are protected specifically; but *outside these limited areas, all citizens have a right to know.* [Emphasis supplied.]

tain to an individual in which his privacy has traditionally been more respected than his own home. Mr. Chief Justice Burger recently stated:

> The ancient concept that "a man's home is his castle" into which "not even the king may enter" has lost none of its vitality. . . .

Rowan v. United States Post Office Dept., 397 U.S. 728, 737, 90 S.Ct. 1484, 1491, 25 L.Ed.2d 736 (1970). Disclosure of the requested lists would involve a release of each registrant's home address, information that the individual may fervently wish to remain confidential or only selectively released.[15] One consequence of this disclosure is that a registrant will be subjected to unsolicited and possibly unwanted mail from Wine Hobby and perhaps offensive mail from others.[16] Moreover, information concerning personal activities within the home, namely wine-making, is revealed by disclosure. Similarly, disclosure reveals information concerning the family status of the registrant, including the fact that he is not living alone and that he exercises family control or responsibility in the household. Disclosure of these facts concerning the home and private activities within it constitutes an "invasion of personal privacy."

We must now balance the seriousness of this invasion of privacy against the public interest purpose asserted by the plaintiff. As noted, the sole purpose for which Wine Hobby has stipulated that it seeks the information is for private commercial exploitation. Wine Hobby advanced no direct or indirect public interest purpose in disclosure of these lists and indeed, we can conceive of none.[17] The disclosure of names of potential customers for commercial business is wholly unrelated to the purposes behind the Freedom of Information Act and was never contemplated by Congress in enacting the Act. In light of this failure by Wine Hobby to assert a public interest purpose for disclosure, we conclude that the invasion of privacy caused by disclosure would be "clearly unwarranted," even though the invasion of privacy in this case is not as serious as that considered by the court in other cases, see, e. g., Rose v. Dept. of the Air Force, 495 F.2d 261 (2d Cir. 1974).[18] On balance, therefore, we believe that the list of names and addresses of the Form 1541 registrants is exempted from disclosure under § 552(b)(6) in the circumstances of this case.

Because we believe that the information requested by Wine Hobby is exempted from disclosure under a specific statutory exemption, we need not reach the question of whether, were the mate-

15. That society recognizes the individual's interest in keeping his address private is indicated in such practices as non-listing of telephone numbers and the renting of post office boxes.

16. As Chief Justice Burger stated in *Rowan, supra*:

> [T]he right of every person "to be let alone" must be placed in the scales with the right of others to communicate.
>
> In today's complex society we are inescapably captive audiences for many purposes, but a sufficient measure of individual autonomy must survive to permit every householder to exercise control over unwanted mail . . . . It places no strain on the doctrine of judicial notice to observe that whether measured by pieces or pounds, Everyman's mail today is made up overwhelmingly of material he did not seek from persons he does not know. And all too often it is matter he finds offensive.
>
> 397 U.S. 728, 736, 90 S.Ct. 1484, 1490, 25 L. Ed.2d 736 (1970).
>
> In *Rowan*, the Court upheld the constitutionality of a statute that authorized the Postmaster General, at the request of an addressee who objected to advertisements as "erotically arousing or sexually provocative," to direct a sender to remove the addressee's name from his mailing list.

17. Denial of the lists, moreover, would impose no private hardship as Wine Hobby may accomplish its stated purpose, advertising, through the general media without specific mailings.

18. The court in *Rose* refused to permit disclosure of case summaries of military honor code adjudications if such disclosure would reveal the identity of the cadets involved.

rial not specifically exempted, the district court possesses equitable jurisdiction to decline to order disclosure.[19]

The judgment of the district court will be reversed.

---

19. *Compare* General Services Administration v. Benson, 415 F.2d 878, 880 (9th Cir. 1969), *aff'g* 289 F.Supp. 590 (W.D.Wash.1968), *with* Getman v. N.L.R.B., 146 U.S.App.D.C. 209, 450 F.2d 670, 677–80 (1971) *and* Robles v. Environmental Protection Agency, 484 F. 2d 843, 847 (4th Cir. 1973). *See also*, Renegotiation Board v. Bannercraft Clothing Co., 415 U.S. 1, 94 S.Ct. 1028, 39 L.Ed.2d 123 (February 19, 1974).