**PHILADELPHIA NEWSPAPERS, INC. and William S. Vance**

v.

**UNITED STATES DEPARTMENT OF JUSTICE et al.**

**Civ. A. No. 75–1523.**

United States District Court, E. D. Pennsylvania.

Nov. 3, 1975.

David H. Marion, Samuel E. Klein, Philadelphia, Pa., for plaintiffs; Harold E. Kohn, P.A., Philadelphia, Pa., of counsel.

Robert E. J. Curran, U. S. Atty., E. D. Pa., J. Clayton Undercofler, III, First Asst. U. S. Atty., Jeffrey Simcox, Asst. U. S. Atty., Philadelphia, Pa., for defendants.

MEMORANDUM

McGLYNN, District Judge.

This action was instituted by Philadelphia Newspapers, Inc., publishers of the *Philadelphia Inquirer,* and William S. Vance, of the *Inquirer's* Washington Bureau, to compel Maurice H. Sigler, Chairman of the United States Board of Parole to disclose, pursuant to the Freedom of Information Act (Act), 5 U.S.C. § 552, thirty-nine letters recommending the parole of Maurice S. Osser (Osser).[1]

The undisputed facts are that on February 14, 1975, Osser was granted parole from prison and that on February 28, 1975, plaintiffs, citing the pertinent provisions of the Act, made a formal request for the disclosure of "all letters and records of communications to the Board by individuals supporting and opposing Mr. Osser's parole", which request was denied by defendant Sigler on March 17, 1975, upon the grounds that disclosure of the letters would constitute a clearly unwarranted invasion of personal privacy and would reveal the identity of persons considered by the Board to be confidential sources. Sigler cited as a basis for this denial the exemptions to the Act found in 5 U.S.C. § 552(b)(6)–(7), and the regulations issued pursuant thereto, 28 C.F.R. § 2.57 (b), which purport to establish Board of Parole policy regarding the confidentiality of communications to the Board.

Plaintiffs appealed Sigler's decision to defendant Attorney General Levi, in accordance with 5 U.S.C. § 552 and 28 C.F.R. § 16.7,[2] but have never received a final ruling. When the thirty days within which the Attorney General should have ruled expired, plaintiffs

---

1. Osser, the former Chairman of the Philadelphia City Commissioners, was convicted of mail fraud, conspiracy, obstruction of justice, and tax fraud, and sentenced to a term of six years imprisonment by the Honorable Donald W. VanArtsdalen, pursuant to 18 U.S.C. § 4208(a)(2) (1969), which authorizes the Board of Parole to release a prisoner committed under that section whenever the Board feels such action is warranted, i. e., without any minimum term of imprisonment as a prerequisite to parole eligibility.

2. 28 C.F.R. § 16.7 (1975) authorizes an appeal to the Attorney General from an initial denial and requires action by him within no more than 30 days.

filed this action basing jurisdiction upon 5 U.S.C. § 552(a)(4)(B).[3]

Shortly thereafter, the Board released thirty-nine letters it had received recommending Osser's parole but with the authors' signatures and all other identifying materials deleted. Plaintiffs continue to seek disclosure of the letters in their unexpurgated form, and have filed a motion for summary judgment which is presently before the Court.

The basic facts are not in dispute and therefore the matter is ripe for summary judgment. For the reasons hereinafter stated, judgment will be granted in favor of the plaintiffs and against the defendants.

The precise issue is whether the identities of the thirty-nine letter writers are exempt from disclosure under § 552(b)(6), (7)(C) or (7)(D).

■■■ Exemptions from disclosure should be narrowly construed[4] and the burden is upon the Government to establish that the materials sought fall within the narrowly construed exemptions. 5 U.S.C. § 552(a)(4)(B) (1975).

Subsection (b)(6) exempts from disclosure "personnel and medical files and similar files, the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." The threshold question in regard to this exemption is whether the letters can be construed to be "similar files", within the meaning of the exemption.

In *Wine Hobby USA, Inc. v. United States Internal Revenue Service*, 502 F.2d 133 (3d Cir. 1974), the Court stated:

"Since the thrust of the exemption is to avoid unwarranted invasions of privacy, the term 'files' should not be given an interpretation that would often preclude inquiry into this more crucial question."

502 F.2d at 135. (footnote omitted) The Court pointed out that "the common denominator in 'personnel and medical and similar files' is the personal quality of information in the file, the disclosure of which may constitute a clearly unwarranted invasion of personal privacy."

Because these letters, for the most part, cite a history of personal friendship and mutual interest in civic and fraternal organizations, I am persuaded that the disclosure of the identity of the authors of the thirty-nine letters would constitute an invasion of privacy. At the same time, however, I am not persuaded that such disclosure would be a *clearly unwarranted* invasion of privacy.

In determining whether this invasion of privacy would be clearly unwarranted, it should be noted that,

"[t]he use of the term 'clearly' in this qualification, which was not inadvertent but purposeful on the part of Congress, was, itself, a 'clear' instruction to the Courts that, in determining the issue . . . they should 'tilt the balance in favor of disclosure.' *Getman v. N.L.R.B., supra* [146 U.S. App.D.C. 209, 450 F.2d 670], at 674 of 450 F.2d."

---

3. Section 552(a)(6)(C) provides in pertinent part: (C) Any person making a request to any agency for records under paragraph (1), (2), or (3) of this subsection shall be deemed to have exhausted his remedies with respect to such request if the agency fails to comply with the applicable time limit provisions of this paragraph. 5 U.S.C. § 552 (a)(6)(C) (1974).

4. "Without question, the Act is broadly conceived. It seeks to permit access to official information long shielded unnecessarily from public view and attempts to create a judicially enforceable public right to secure such information from possibly unwilling official hands." *Environmental Protection Agency v. Mink*, 410 U.S. 73, 80, 93 S.Ct. 827, 832, 35 L.Ed.2d 119, 128 (1973).

"[T]he Act seeks to 'establish a general philosophy of full agency disclosure unless information is exempted under clearly delineated statutory language.'" *N.L.R.B. v. Sears, Roebuck & Co.*, 421 U.S. 132, 95 S.Ct. 1504, 1509, 44 L.Ed.2d 29, 39 (1974), *quoting* S.Rep.No.813, 89th Cong., 1st Sess. 3 (1965).

*Robles v. Environmental Protection Agency,* 484 F.2d 843, 846 (4th Cir. 1973).

In *Wine Hobby,* the Court refused to compel the Bureau of Alcohol, Tobacco, and Firearms to disclose to a distributor of home winemaking supplies the names and addresses of persons who had filed home winemaking registration forms as required by law. The Court arrived at the conclusion that the release of the names and addresses would be a clearly unwarranted invasion of privacy by balancing the seriousness of the invasion against the purpose asserted for the disclosure. The Court noted that the sole purpose for which the plaintiff sought the names and addresses was for private commercial exploitation, a purpose unrelated to the reasons behind the enactment of the Freedom of Information Act.

In contrast, the letters in the case at bar were testimonials to the character and reputation of a convicted felon, unsolicited by the Board of Parole and clearly intended by the authors to influence the action of the Board.

██ Balancing the public's right to be informed of the basis upon which a former high public official was released from custody against the seriousness of the invasion of privacy, I conclude that the disclosure of the identities of the letter writers would not be a clearly unwarranted invasion of personal privacy. Since character witnesses at the time of trial are required to testify in open court, I cannot regard as being a serious invasion of privacy the disclosure of the identity of persons who are, in effect, character witnesses before the Board of Parole.

Exemption 7, also relied upon by the defendants, exempts "investigatory records compiled for law enforcement purposes, but only to the extent that the production of such records would . . . (C) constitute an unwarranted invasion of personal privacy, (D) disclose the identity of a confidential source . . . ." 5 U.S.C. § 552(b)(7). Obviously, the initial question is whether the letters are investigatory records compiled for law enforcement purposes. The cases cited by the defendants in support of their contention that these unsolicited letters constitute investigatory files are inapposite. Each case involved an evidence gathering process with a view towards enforcement of the law through prosecution.[5] It is also significant that they were all decided before Congress, reacting to the broad construction the courts were giving the statutory language, amended 5 U.S.C. § 552(b)(7) to "clarify Congressional intent disapproving certain court interpretations which have tended to expand the scope of agency authority to withhold certain investigatory files compiled for law enforcement purposes". Conf. Comm.Rep.No.93–1200 93rd Cong., 2d Sess., 1974.

██ In the broadest sense it might be said that the Board of Parole has the responsibility for "investigating" an applicant's suitability for parole. Nevertheless, given our mandate to construe the exemptions narrowly, this information gathering procedure is not for the purpose of law enforcement but is mere-

---

5. *Koch v. Dept. of Justice,* 376 F.Supp. 313 (D.D.C.1974) (FBI files on Congressmen's activities); *Weisberg v. Dept. of Justice,* 160 U.S.App.D.C. 71, 489 F.2d 1195 (1973) (Records of FBI investigation of Kennedy assassination); *Aspin v. Dept. of Defense,* 160 U.S.App.D.C. 231, 491 F.2d 24 (1973) (Investigation of possible coverup in original Army investigation of My Lai incident.) *Center for National Policy Review on Race and Urban Issues v. Weinberger,* 163 U.S. App.D.C. 368, 502 F.2d 370 (4th Cir. 1974) (NLRB investigation into union objections to election at pre-unfair labor practice complaint stage); *Rural Housing Alliance v. U. S. Dept. of Agriculture,* 162 U.S.App.D.C. 122, 498 F.2d 73 (1974) (investigation into illegal racial discrimination in federal mortgage administration). *See* S.Rep.No.813, 89th Cong., 1st Sess. 9 (1965); wherein it is stated, "Investigatory files are the files prepared by the Government agencies to prosecute law violations." 111 Cong.Rec. 26823 (1965).

ly a part of the decision making process of the Board of Parole.[6]

■■■ However, even if the letters were investigatory files, it must still be established that their disclosure would either constitute an unwarranted invasion of personal privacy or disclose the identity of a confidential source. Unwarranted, in this context, means without justification or adequate reason. I am satisfied that there is sufficient justification in the public's right to know what factors prompted the release of a former public official whose incarceration stemmed from a breach of his public trust, before the expiration of his term of imprisonment.

■■■ Nor am I convinced that the disclosure of these names would reveal the identity of a confidential source. The legislative history of this exemption suggests that the term "confidential source" was a Conference Committee replacement for the Senate term "informer" and was designed to make it clear that unpaid sources of information who were given an express assurance of confidentiality or who could rea-

sonably infer such an assurance from the circumstances would be protected from reprisals. Conf.Comm.Rep.No.93–1200, *supra* at 6291. There is an obvious difference between facing reprisal for "informing" on a wrongdoer and facing public scrutiny for supporting a convict's application for parole. Since there was no express assurance of confidentiality extended to any of the writers and since none of them requested it, the umbrella of "confidential source" does not extend to the authors in question. No assurance of confidentiality may reasonably be inferred from the parole board's regulation[7] in light of the fact that the letters were unsolicited.

■ To the extent that the regulation, of its own authority seeks to confer confidentiality upon these letters, I find that it is without any statutory support. *Compare, Evans v. Department of Transportation,* 446 F.2d 821 (5th Cir. 1971).

Accordingly, the plaintiff is entitled to summary judgment and an Order will be entered directing the defendants to disclose the letters in their entirety.

6. In support of its contention that parole records can be compiled for "law enforcement purposes", the defendants cite the Privacy Act of 1974, (effective September 27, 1975), specifically, 5 U.S.C. § 552a(j)(2)(C), relating to files which may be exempted from several new provisions of the Act not pertinent herein. Subsection (j)(2)(C) refers to "reports identifiable to an individual compiled at any stage of the process of enforcement of the criminal laws from arrest or indictment through *release from supervision.*" (emphasis added) While this passage may suggest that Congress has used the term "law enforcement purposes" broadly to include parole, the preceding provisos (A) and (B) strongly suggest that such reports are not "investigatory files". Proviso (A) refers to criminal extracts and (B) refers to "information compiled for the purpose of a

criminal investigation . . . and associated with an identifiable individual."

Thus, provisos (A), (B), and (C) describe three different types of file. We must assume that Congress was not being redundant, and hence, reports compiled at the parole stage of the law enforcement process (§ 552a(j)(2)(C)) are different from information compiled for the purpose of a criminal *investigation* (§ 552a(j)(2)(B)).

7. *Confidentiality of Parole Records.*

. . . . .

(b) Who, if any one, has supported or opposed an application for parole may be revealed at the Board's discretion only in the most exceptional circumstances, with the express approval of such person(s) and after a decision relative to parole has been made. 28 C.F.R. § 2.57(b).