The COMMITTEE ON MASONIC HOMES OF the R. W. GRAND LODGE, F. & A. M. OF PENNSYLVANIA, Plaintiff,

v.

NATIONAL LABOR RELATIONS BOARD et al., Defendants.

Civ. A. No. 76–851.

United States District Court,
E. D. Pennsylvania.

May 26, 1976.

428

Stephen J. Cabot, Martin J. Sobol, Douglas G. Linn, II, Pechner, Dorfman, Wolffe & Rounick, Philadelphia, Pa., for plaintiff.

Barry R. Elson, National Labor Relations Board, Region 4, Philadelphia, Pa., for defendants.

## OPINION AND ORDER

VanARTSDALEN, District Judge.

### ISSUES

Two basic issues are presented in this action involving the inter-relation of the Freedom of Information Act (FOIA), 5 U.S.C. § 552 (1967), *as amended*, 5 U.S.C. § 552 (Supp.1976), with hearings conducted by the National Labor Relations Board (NLRB) to determine whether to direct a representation election, pursuant to Section 9(c) of the Labor-Management Relations Act of 1947 (LMRA), 29 U.S.C. § 159(c)(1973). *First*: Are employee authorization cards that have been obtained by a union and presented to the NLRB in connection with a union petition for a certified election disclosable under the FOIA? I conclude that the answer is "Yes". *Second*: Is an employer entitled to enjoin NLRB representation proceedings pursuant to Section 9(c) of the LMRA until the employer has had the opportunity to examine the authorization cards? I conclude the answer is "No". Consequently, defendants will be ordered to permit plaintiff to examine the documents under the FOIA, but the representation proceedings before the NLRB will not be enjoined pending such examination.

## PROCEDURAL POSTURE

Plaintiff seeks to inspect employees' authorization cards that were presented by a union to the NLRB as evidence of substantial employee interest in being represented by the union. Included in the requests for production are "any documents indicating the Region's final determination of the Petitioner's showing of interest or lack thereof." Secondly, the plaintiff seeks to enjoin any proceedings before the NLRB concerning the representation of its employees until plaintiff has obtained the information which it seeks under the FOIA.[1]

An application for a temporary restraining order to prohibit the NLRB from proceeding with the representation hearing was denied. In accordance with the mandate of the FOIA,[2] an early hearing date was scheduled on the motion for a preliminary injunction. Defendants submitted a motion for summary judgment. Pursuant to Fed.R.Civ.P. 65(a)(2), a consolidated hearing was held on the motion for a preliminary injunction and on the merits of a permanent injunction. A stipulation of facts was filed. Argument was heard on all the outstanding motions which are now ripe for final determination and judgment.

## JURISDICTION

The action was filed pursuant to the FOIA, 5 U.S.C. § 552(a)(4)(B) (Supp.1976), *amending* 5 U.S.C. § 552(a)(1967), which expressly vests jurisdiction in the district courts. Venue is proper in this district. Plaintiff's principal place of business, and the agency records are in this district. The statute requires that the district court determine the matter de novo.

## FACTS

1. On February 20, 1976, the American Federation of Grain Millers, AFL–CIO, filed on a standard printed form, a "representation petition" with Region 4 of the NLRB at Philadelphia, Pennsylvania, pursuant to Section 9 of the LMRA, 29 U.S.C. § 159(c)(1973). The petition alleged that a substantial number of the plaintiff's employees at a nursing home located in Elizabethtown, Pennsylvania, wished to be represented for collective bargaining purposes by the petitioner. The petition sought an NLRB directed election and certification in accordance with the LMRA.

2. The petition filed on February 20, 1976 alleged, *inter alia*, that the proposed unit consisted of 320 employees, and that the petition was supported by 30% or more of such employees. By letter of March 6, 1976, the plaintiff-employer wrote to the NLRB questioning the 30% "showing of employee interest" because plaintiff's records disclosed a payroll of over 480 employees.

3. Section 101.18 of Statement of Procedures for the NLRB provides that under most circumstances the petitioning union must be the authorized agent for at least 30% of the employees of the proposed unit in order to establish a showing of interest of a "substantial number of employees," as provided in 29 U.S.C. § 159(c)(1)(A)(1973).

4. By letter dated March 15, 1976, the plaintiff made a formal request to defendant, Peter W. Hirsch, Regional Director of the NLRB to supply the following information:

1. All authorization cards submitted by the Petitioner as evidence of its showing of interest.

2. Any documents indicating the Region's final determination of the Petitioner's showing of interest or lack thereof.

The letter further stated:

Counsel for Employer requests the above mentioned information in view of

---

1. Plaintiff also sought the convening of a three-judge court, contending that Section 9(c) of LMRA as it was being applied would be unconstitutional. That request has been withdrawn.

2. Except as to cases the court considers of greater importance, proceedings before the district court, as authorized by this subsection, and appeals therefrom, take precedence on the docket over all cases and shall be assigned for hearing and trial or for argument at the earliest practicable date and expedited in every way.

5 U.S.C. § 552(a)(4)(D) (Supp.1976), *amending* 5 U.S.C. § 552(a) (1967).

the fact that it wishes to attack the validity of the signatures, the manner in which the cards were solicited and the accuracy of the dates of the cards.

(Exhibit D—Stipulation of Facts).

5. The request was denied by defendants, who claimed a privilege against disclosure under the statutory exemptions 5, 6, 7(A) and 7(C) of the FOIA. (Exhibit F—Stipulation of Facts). In defendants' brief and at oral argument, defendants additionally relied on exemption 7(D), 5 U.S.C. § 552(b)(5), (6), 7(A), (7)(C), (7)(D) (Supp. 1976), *amending* 5 U.S.C. § 552(b) (1967).

6. By mailgram of March 18, 1976, plaintiffs requested that defendants hold in abeyance the scheduled Section 9 representation hearing until "the employer has had a reasonable opportunity to procure and inspect the sufficiency of the authorization cards submitted to the Board by the organizing union." The request was not granted by defendants.

## CONCLUSIONS OF LAW

1. The court has jurisdiction of the parties and subject-matter, insofar as the complaint seeks relief under the FOIA, 5 U.S.C. § 552(a)(4)(B) (Supp.1976), *amending* 5 U.S.C. § 552(a) (1967).

2. The plaintiff-employer is entitled under the FOIA to inspect authorization cards signed by its employees authorizing a union to act as their bargaining agent, which cards were presented to the NLRB by the union as evidence of a substantial showing of interest by employees in order to have the NLRB order and certify an election pursuant to Section 9(c) of the LMRA.

3. The court lacks authority, under the facts, to enjoin the representation proceedings presently being conducted pursuant to 29 U.S.C. § 159(c)(1) (1973), before the NLRB wherein the union seeks a certified election.

## DISCUSSION

When a complaint is filed under the FOIA, the statute provides that the "court shall determine the matter de novo . . . and the burden is on the agency to sustain its action." 5 U.S.C. § 552(a)(4)(B) (Supp. 1976). The right of the NLRB to refuse the employer access to union authorization cards signed by the employees, and to refuse to divulge any information as to the identity or even the total number of such employees, depends upon an interpretation of the exemptions specified in the FOIA.

The present NLRB proceedings involve only a Section 9 representation proceeding seeking an NLRB certified election. There is no pending unfair labor practice charge or investigation against the employer so far as the record indicates. The NLRB has consistently taken the position that in representation proceedings it maintains a neutral and non-adversary stance.[3] *See AFL v. NLRB,* 308 U.S. 401, 60 S.Ct. 300, 84 L.Ed. 347 (1940) for an analysis of the distinct roles played by the NLRB in representation proceedings contrasted with enforcement proceedings for unfair labor practices.

 Agency documents and information are available to the public unless the materials sought come within a statutory exemption.

[The FOIA] seeks "to establish a general philosophy of full agency disclosure unless information is exempted under clearly delineated statutory language." S.Rep.No.813, 89th Cong., 1st Sess., 3 (1965) (hereinafter S.Rep.No.813); *EPA v. Mink, supra,* [410 U.S. 73 (1973)] at 80 [93 S.Ct. 827 at 832, 35 L.Ed.2d 119]. As the Act is structured, virtually every document generated by an agency is available to the public in one form or another, unless it falls within one of the Act's nine exemptions.

*NLRB v. Sears, Roebuck & Co.,* 421 U.S. 132, 136, 95 S.Ct. 1504, 1509, 44 L.Ed.2d 29, 39 (1975). Rights to information are nei-

---

**3.** The NLRB is strongly affirming this contention in a pending action before this court wherein certain church entities are opposing any NLRB representation hearing, investiga-

tion and/or election under Section 9 of the LMRA. *Caulfield v. Hirsch,* 410 F.Supp. 618 (E.D.Pa., 1976) (opinion on motion to dismiss and dissolve three judge court).

ther increased nor decreased by reason of the interest or "need" of the applicant.

Sears' [the applicant] rights under the Act are neither increased nor decreased by reason of the fact that it claims an interest in the Advice and Appeals Memoranda greater than that shared by the average member of the public. The Act is fundamentally designed to inform the public about agency action and not to benefit private litigants. *EPA v. Mink,* 410 U.S. 73, 79, 92 [93 S.Ct. 827, 832, 838, 35 L.Ed.2d 119] (1973); *Renegotiation Board v. Bannercraft Clothing Co.,* 415 U.S. 1, 24 [94 S.Ct. 1028, 1040, 39 L.Ed.2d 123] (1974).

*NLRB v. Sears, Roebuck & Co., supra,* at 143 n. 10, 95 S.Ct. at 1513, 44 L.Ed.2d at 43.

Bearing in mind these guidelines, the claimed exemptions will be examined.

### Exemption 5

5 U.S.C. § 552(b)(5) (1967) exempts from disclosure

inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency.

█ I fail to see how the authorization cards obtained by the union and presented to the NLRB for the purpose of showing that "a substantial number of employees (i) wish to be represented for collective bargaining . . .", 29 U.S.C. § 159(c)(1)(A) (1973), constitute inter or intra-agency memorandums or letters. In defendants' brief, it is contended that exemption 5 applies because of "executive privilege", that the cards are "predecisional memoranda which reflect the agency's deliberative processes", and that "attorney work-product privilege" applies. The defendants apparently are attempting to argue that if an unfair labor practice enforcement proceeding was brought before the NLRB, the employer would not be allowed pretrial discovery of these documents, and therefore is precluded from obtaining them under the FOIA. That, however, would be a different case. There is nothing in the record to suggest that the material now held by the

NLRB was gathered for the purpose of an unfair labor practice charge. This case does not present the issues raised in *Title Guarantee Co. v. NLRB,* 534 F.2d 484 (2d Cir. 1976). The present case is similarly distinguishable from the recent opinion of Judge Luongo, of this court in *Local 30, etc. v. NLRB,* 408 F.Supp. 520 (E.D.Pa.1976). If defendant's argument was accepted, any and all documents received by the NLRB that might at some indefinite future date be relevant in an unfair labor practice charge would be exempt under the FOIA. In other words, every document that the NLRB ever receives in the course of its business would probably be exempt. Under the facts of this case, where no unfair labor practice charge is being processed or investigated concerning the plaintiff-employer, exemption 5 does not apply.

### Exemptions 6 and 7(C)

Excluded under exemption 6 are

personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy . . . . .

█ 7(C), adopted as a part of the 1974 amendments to the FOIA exempts

investigatory records compiled for law enforcement purposes, but only to the extent that the production of such records would . . . (C) constitute an unwarranted invasion of personal privacy . . . . .

The statute does not attempt to define what constitutes a "clearly unwarranted invasion of personal privacy" and/or an "unwarranted invasion of personal privacy." Decided cases clearly indicate that under normal circumstances, intimate family relations, personal health, religious and philosophic beliefs, and matters that would prove personally embarrassing to an individual of normal sensibilities should not be disclosed. Marital status, legitimacy of children, medical conditions, and welfare payments were considered nondisclosable in *Rural Housing Alliance v. U. S. Dept. of Agriculture,* 162 U.S.App.D.C. 122, 498 F.2d

73 (1974); medical files in *Ackerly v. Ley,* 137 U.S.App.D.C. 133, 420 F.2d 1336 (1969); family status and home activities in *Wine Hobby USA Inc. v. IRS,* 502 F.2d 133 (3d Cir. 1974). In *Robles v. EPA,* 484 F.2d 843, 845 (4th Cir., 1973), the court observed that exemption 6

> applies only to information which relates to a specific person or individual, to "intimate details" of a "highly personal nature" in that individual's employment record or health history or the like
> . . . .

■ The sought after materials are not personnel files or medical files, nor are authorization cards "similar files" to personnel or medical files. Consequently, exemption 6 is not applicable and it is unnecessary to determine whether divulging the cards would be a "clearly unwarranted invasion of personal privacy."

■ As to exemption 7(C), I find difficulty in concluding that cards are "investigatory records compiled for law enforcement purposes." I am of the opinion that "law enforcement purposes" means agency investigations having as their object criminal or civil adversary proceedings. The fact that these cards might at some future time be relevant in a "refusal to bargain" enforcement proceeding does not mean they were "compiled for law enforcement purposes." It may be argued that the neutral investigatory role that the NLRB plays in determining whether to direct a representation election is, nevertheless, a civil "law enforcement purpose", because the NLRB is carrying out a statutorily mandated procedure. Accepting that proposition arguendo, the exemption applies only if disclosure would result in an "unwarranted invasion of personal privacy." Confronted with this statutory language, several courts have utilized a balancing test between the need and the extent of personal privacy involved. In *Getman v. NLRB,* 146 U.S.App.D.C. 209, 450 F.2d 670 (1971), the court directed the NLRB to disclose the names and addresses of employees eligible to vote in certain elections where the plaintiffs sought to question, on a voluntary basis, such employees regarding their voting in a study of NLRB election procedures. Although applying a balancing test, the court reiterated that the information sought must come within an express exception or be disclosed. *Id.* at 677.

Several courts have considered whether the information was obtained under either an express or implied pledge of secrecy. *See, e. g., Philadelphia Newspapers, Inc. v. U. S. Dept. of Justice,* 405 F.Supp. 8 (E.D. Pa.1975). There is nothing in the record of this case to suggest that the union obtained the cards under a pledge of secrecy. Clearly, it could not have done so on behalf of the NLRB. Almost certainly, the signers of the cards were, or should have been aware of the cards' purpose and that the cards would be delivered to a public agency, if not the employer. I see no reason why a person should be embarrassed or harmed should it come to the employers' or anyone else's attention that such person executed a union authorization card.

■ When a union is able to obtain bona fide authorization cards from a majority of employees, the union is entitled to be recognized as the exclusive bargaining agent under 29 U.S.C. § 159(a). The employer would be entitled to examine the authorization cards, and if the employer had a "good faith doubt" regarding the union's majority status, he could insist on an election under the *Joy Silk* doctrine. *Joy Silk Mills, Inc.,* 85 NLRB 1263 (1949), *enforced,* 87 U.S.App. D.C. 360, 185 F.2d 732 (1950). *See also NLRB v. Gissel Packing Co.,* 395 U.S. 575, 592, 89 S.Ct. 1918, 1928, 23 L.Ed.2d 547, 565 (1969). Where a majority is not obtained, but 30% or more is obtained, the union may allege "a substantial number of employees wish to be represented" under 29 U.S.C. § 159(c) and seek an NLRB election and certification. It is, therefore, unrealistic to claim that the disclosure of the authorization cards to the employer would be an unwarranted invasion of personal privacy.

■ The NLRB argues that to require disclosure may spawn some unfair labor practice by the employer. If such should

occur, there are adequate remedies in existence under LMRA. Furthermore, I do not think that information may be withheld under the FOIA because some governmental agency fears that the information, if obtained, may be used for an illegal purpose. Congress did not include such an exemption.

 In this connection, the NLRB raises the specter of the "chilling effect" this disclosure may have on future authorization cards being obtained by unions. There is nothing in the record to confirm that there would be any chilling effect.

If a balancing test is to be applied, it must not be overlooked that if the employer can establish that some of the authorization cards were not signed by employees, that information should be brought to the attention of the NLRB in order for it to make an informed decision regarding whether to direct an election. In addition, if the employer examines the cards and is satisfied with their authenticity, the employer might well agree to an election pursuant to 29 U.S.C. § 159(c)(4).

 I find nothing in the record that would constitute an unwarranted invasion of privacy. Thus, the cards are not exempt under 7(C).

### Exemption 7(A)

[I]nvestigatory records compiled for law enforcement purposes, but only to the extent that the production of such records would (A) interfere with enforcement proceedings . . . .

are expressly exempt. Assuming that these are investigatory records compiled for law enforcement purposes (which is very doubtful), I fail to see how disclosure would or could interfere with enforcement proceedings. If the "enforcement proceedings" are the proceedings on the petition for an election, disclosure of the names or the employees requesting an election will not interfere with the NLRB carrying out its statutory duty of deciding whether to direct an election. Nor, absent an unfair labor practice interference by the employer, subject to

other severe penalties, could disclosure in any way interfere with the election. As noted previously, disclosure might even result in a consent election under 29 U.S.C. § 159(c)(4).

### Exemption 7(D)

The final exemption urged by the defendants to be applicable is 7(D):

[I]nvestigatory records compiled for law enforcement purposes, but only to the extent that the production of such records would . . . (D) disclose the identity of a confidential source and, in the case of a record compiled by a criminal law enforcement authority in the course of a criminal investigation, or by an agency conducting a lawful national security intelligence investigation, confidential information furnished only by the confidential source . . . . .

 This exemption was plainly intended to protect the disclosure of the identity of informants, and information received from informants. Merely because an agency claims an exemption on the basis of "confidentiality" without any showing that the material was received in any way in confidence, does not bring the matter within the exemption.

There may be reasons of sound policy why the NLRB does not want to disclose authorization cards in the context of a representation proceeding. Congressional policy as embodied in the FOIA is, however, overriding. Information held by governmental agencies must be disclosed on proper application unless clearly exempt. The NLRB has not met its burden to sustain its action.

Although the above discussion relates primarily to the authorization cards, plaintiff also seeks "any documents indicating the Region's final determination of the petitioner's showing of interest or lack thereof." Whether such a final determination has been made does not clearly appear from the record. The fact that the NLRB has sent out notices of a hearing would seem to indicate some final determination that "it has reasonable cause to believe that a ques-

tion of representation affecting commerce exists." 29 U.S.C. § 159(c)(1) (1973).

 If such a final determination was accomplished by some formal action of the NLRB or by written documentation, and such has not been made available to the plaintiff, the same shall be disclosed.

### Injunctive Relief

Having determined that plaintiff is entitled to the information it seeks, it must be decided whether injunctive relief prohibiting further NLRB proceedings pending receipt of the information is appropriate.

It is clear that under the FOIA a district court has jurisdiction "to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant." 5 U.S.C. § 552(a)(4)(B) (Supp.1976). No other remedy is provided. Ordinarily no other would be necessary. An order may direct production promptly or forthwith. To delay other pending proceedings before the agency would normally not be needed.

 In the present case, it would be inappropriate to enjoin the agency representation hearing. Only in very rare cases may a district court assert any jurisdiction over an NLRB proceeding. *Sears, Roebuck & Co. v. NLRB,* 153 U.S.App.D.C. 380, 473 F.2d 91 (1972), *cert. denied,* 415 U.S. 950, 94 S.Ct. 1474, 39 L.Ed.2d 566 (1974), reversed a stay order against the NLRB in an unfair labor charge proceeding, pending disclosure of information under the FOIA to the employer, for lack of showing of irreparable harm.

*Renegotiation Board v. Bannercraft Co.,* 415 U.S. 1, 94 S.Ct. 1028, 39 L.Ed.2d 123, is a strong precedent for denying injunctive relief. The Supreme Court expressly left open the question of whether it would ever be proper to enjoin governmental action pending receipt of FOIA information.

We find it unnecessary, however, to decide in these cases, whether, or under what circumstances, it would be proper for the District Court to exercise jurisdiction to enjoin agency action pending the resolution of an asserted FOIA claim.

*Id.* at 20, 94 S.Ct. at 1038, 39 L.Ed.2d at 137. The Supreme Court further stated in that decision 415 U.S. at 24, 94 S.Ct. at 1040, 39 L.Ed.2d at 139:

Without a clear showing of irreparable injury, see *Virginia Petroleum Jobbers Assn. v. FPC,* 104 U.S.App.D.C. 106, 111, 259 F.2d 921, 926 (1958), failure to exhaust administrative remedies serves as a bar to judicial intervention in the agency process. *Myers, supra* [*Myers v. Bethlehem Shipbuilding Corp.,* 303 U.S. 41, 58 S.Ct. 459, 82 L.Ed. 638]; *Sears Roebuck & Co. v. NLRB,* 153 U.S.App.D.C. 380, 382, 473 F.2d 91, 93 (1972).

I find no irreparable injury in this case. The NLRB may proceed with the hearing. It may direct an election, or it may deny the union's petition for an election. If an election is held, it may go either way, and in any event, the election of union representation by employees causes no legal harm to the employer. The employer will not be irreparably harmed irrespective of whether it examines the authorization cards prior to the conclusion of the NLRB proceedings. In addition, the employer could assert its usual rights under Sections 10(e) and 10(f) of the LMRA.

The application for an injunction against the NLRB hearing will be denied. This is not to suggest, however, that the NLRB, as a matter of policy and appropriate procedure should proceed with the representation proceedings before the plaintiff has had a reasonable opportunity to examine the documents.

To the extent that the foregoing "Discussion" states facts and conclusions of law, the same shall be deemed findings of fact and conclusions of law the same as if set forth under such specific headings.