**HMG MARKETING ASSOCIATES, Plaintiff,**

v.

**Rowland G. FREEMAN, III as Administrator of the General Services Administration, Defendant.**

**No. 80 Civ. 1865 (CBM).**

United States District Court, S. D. New York.

Dec. 19, 1980.

Blumberg, Singer, Ross, Gottesman, Paradise & Gordon by Allen N. Ross, New York City, for plaintiff.

John S. Martin, Jr., U. S. Atty., S.D.N.Y., New York City, for defendant.

## MEMORANDUM OPINION

MOTLEY, District Judge.

The parties have filed cross motions for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. For the reasons set forth below, this court denies plaintiff's (HMG Marketing Associates (HMG)) motion and grants defendant's (General Services Administration (GSA)) motion for summary judgment.

## FACTS

In November, 1979, GSA issued a news release entitled "Historic Carson City Silver Dollars to be Sold in 1980," which notified the public that GSA intended to sell one million silver dollars. This release also advised the public that order forms and additional information would be available upon request. GSA received over 600,000 postcards and letters in response. The postcards and letters were used to prepare a computerized "Mailing List" to assist in forwarding the requested materials.[1] HGM

---

1. Plaintiff goes to considerable trouble to distinguish between the Mailing List and a second computer list of names and addresses allegedly known as the "Bidder's List." The Bidder's List allegedly contains names and addresses of individuals who actually ordered silver dollars, rather than just inquiring about purchase. HMG argues that the invasion of privacy would be much greater if the Bidder's List were disclosed, and that GSA incorrectly assumed

HMG was requesting disclosure of the Bidder's List rather than the less sensitive Mailing List.

However, a letter from GSA Deputy Administrator Ray Kline to plaintiff's President, H. Milton Gurwitz, dated March 26, 1980, shows that Mr. Kline assumed plaintiff was requesting the Mailing List when he affirmed the decision of GSA's Regional Administrator denying the disclosure request. Even assuming GSA's Regional Administrator misunderstood plaintiff's FOIA request, Mr. Kline's letter shows that

does not controvert GSA's assertion that "over 99% of the names and addresses are clearly identifiable as those of individuals and not commercial entities." (Plaintiff's Affidavit of Peggy Lowndes at ¶ 5).

On January 4, 1980, HMG sought disclosure of the Mailing List pursuant to the Freedom of Information Act (FOIA), 5 U.S.C. § 552. By its own admission, HMG is in the business of "direct mail advertising" which involved "the sending of unsolicited advertising materials to individuals for the purpose of selling merchandise and services." (Plaintiff's Answer to Defendant's Interrogatories, # 5; Defendant's Exhibit D at pg. 3). GSA denied HGM's request for disclosure of the mailing list on January 29, 1980, citing Exemption 6 of the FOIA, which reads in pertinent part:

(b) This section does not apply to matters that are—

. . . . .

(6) personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy.

5 U.S.C. § 552(b)(6).

HMG appealed the denial of its request on February 12, 1980. GSA affirmed the denial by a letter from its Assistant Administrator, Mr. Ray Kline, dated March 26, 1980. HGM then instituted this action pursuant to 5 U.S.C. § 552(a)(4)(B) to obtain a mandatory injunction requiring GSA to release the Mailing List and requesting this court to assess costs and reasonable attorneys' fees against GSA.

## DISCUSSION

 The FOIA's primary purpose is to increase public access to government records. *See Bristol-Myers Co. v. F.T.C.*, 424 F.2d 935, 938 (D.C.Cir.1970). Congress intended to close "loopholes which allow agencies to deny legitimate information to the public." S.Rep.No.813, 89th Cong., 1st Sess. 3 (1965). The portion of the FOIA

conferring jurisdiction on the federal courts to review agency decisions regarding disclosure specifically states that "the burden is on the agency" to defend a decision withholding information. 5 U.S.C. § 552(a)(4)(B). Accordingly, the various enumerated exemptions to disclosure contained in the FOIA are to be strictly construed. *See Rose v. Department of the Air Force*, 495 F.2d 261 (2d Cir. 1974), *aff'd*, 425 U.S. 352, 96 S.Ct. 1592, 48 L.Ed.2d 11 (1976) (*Rose*). However, this court also notes that Congress realized the necessity of protecting "certain equally important rights of privacy with respect to certain information in government files, such as medical and personal records." Senate Report No. 813, 89th Cong., 1st Sess. 3 (1965).

In *Rose* the Second Circuit described the application of Exemption 6 as follows:

Each case involves an essentially unique investigation into the nature of the privacy interest invaded and the extent of the proposed invasion, viewed in light of contemporary mores and sensibilities.

*Rose v. Dept. of the Air Force*, 495 F.2d 261, 266 (2nd Cir. 1974). In affirming the Second Circuit's decision, the Supreme Court stated:

Congress sought to construct an exemption that would require a balancing of the individual's right of privacy against the preservation of the basic purpose of the Freedom of Information Act "to open agency action to the light of public scrutiny."

425 U.S. at 379, 96 S.Ct. at 1607.

 Existing law clearly requires this court to balance various competing values in deciding whether Exemption 6 can legally be relied on by GSA to support its refusal to disclose the Mailing List. To aid in striking the proper balance, the court will focus on (1) the public interest to be served by disclosure in light of the admitted purpose for which disclosure is sought, and (2) the

GSA's ultimate decision was not to release the list of names and addresses known as the Mailing List which contained the names and addresses of those persons who requested information about the coin sale. That is the decision which is before this court and the decision which both sides appear to discuss in their respective papers.

degree to which the requested disclosure would constitute an invasion of privacy. *See Campbell v. U.S. Civil Service Commission*, 539 F.2d 58, 61 (10th Cir. 1976); *Church of Scientology v. United States Department of the Army*, 611 F.2d 738, 746 (9th Cir. 1979); *Disabled Officer's Association v. Rumsfeld*, 428 F.Supp. 454, 457–58 (D.D.C.1977). Finally, the court will consider what impact, if any, GSA's own disclosure regulations have on the balancing process.

*The Public's Interest In Disclosure*

HMG admits that the purpose of its request is to facilitate merchandising efforts through the mail. In evaluating what public interest, if any, is implicated by HMG's intended use of the Mailing List, the court begins by noting an observation of the Supreme Court's albeit in a different context:

> Today's merchandising methods, the plethora of mass mailings subsidized by low postal rates, and the growth of the sale of large mailing lists as an industry in itself have changed the mailman from a carrier of primarily private communications . . . and have made him an adjunct of the mass mailer who sends unsolicited and often unwanted mail into every home. It places no strain on the doctrine of judicial notice to observe that whether measured by pieces or pounds, Everyman's mail today is made up overwhelmingly of materials he did not seek from persons he did not know.

*Rowan v. United States Post Office*, 397 U.S. 728, 736, 90 S.Ct. 1484, 1490, 25 L.Ed.2d 736 (1970).

None of the traditional purposes of disclosure under the FOIA are served by disclosure here. Certainly HMG cannot maintain that disclosure will serve to "open agency action to the light of public scrutiny." *Department of the Air Force v. Rose, supra*, 425 U.S. at 379, 96 S.Ct. at 1607. Bluntly put, the court is hard pressed to discern any public interest in seeing that HMG has access to the Mailing List.

In an effort to buttress its claim that important public interests will be served by release of the Mailing List, HMG has attempted to compare GSA's refusal to disclose the Mailing List with GSA's previous disclosures in response to FOIA requests. In particular, HMG points to GSA's previous disclosures in 1974 of the names of people who purchased silver dollars from GSA, and GSA's continuing disclosure of lists of those persons who have asked to be advised of sales by the government from the defense stockpile and surplus government property. With respect to the former disclosure, it is sufficient to note that it took place before judicial decisions holding that Exemption 6 permitted non-disclosure of similar information. *See Wine Hobby, USA Inc. v. U.S. Internal Revenue Service*, 502 F.2d 133 (3rd Cir. 1974) (discussed below); *see e. g., Disabled Officer's Association v. Rumsfeld*, 428 F.Supp. 454 (D.D.C. 1977) (names and addresses disclosed to non-profit organization only after representation to District Court that list would not be used for commercial purposes). Moreover, it is senseless to maintain that simply because an agency has acted incorrectly in the past, it is thereby deprived of the opportunity to correct its actions in the future.

As for the latter disclosure by GSA of lists of persons and companies who purchase government surplus; a comparison between such disclosure and disclosure of the Mailing List requested here supports GSA's action rather than undermining it. First, those lists are composed primarily of commercial entities rather than individuals. Second, the companies and persons on those lists have a continuous commercial relationship with the United States government. There is an obvious public interest in the circumstances under which the government disposes of large amounts of surplus property to commercial enterprises engaged in the business of reselling such items. In contrast, the instant case involves a list composed almost entirely of private individuals who have inquired about a single, non-repeating commercial transaction. None of the disclosure interests embodied in the FOIA are threatened by failure to disclose the information at issue here.

*The Degree of Privacy Invaded*

HMG maintains that the invasion of privacy resulting from disclosure of the Mailing List here is too slight to even consider that list a file "similar" to "personnel and medical files." 5 U.S.C. § 552(b)(6). Thus, according to HMG, Exemption 6 is simply inapplicable. The court is unable to accept this extreme position. First, it is untenable to argue that a person's name and address are not information of a personal nature. Second, this argument was persuasively rejected by the Third Circuit in *Wine Hobby USA, Inc. v. United States Internal Revenue Service,* 502 F.2d 133 (3rd Cir. 1974) (*Wine Hobby*).

*Wine Hobby* involved an attempt to obtain disclosure of names and addresses in the possession of the United States Bureau of Alcohol, Tobacco and Firearms. The names and addresses belonged to people who complied with government regulations requiring registration by "head[s] of any family" who intended to produce wine for family use. 26 C.F.R. §§ 240.540–543. In attempting to determine the gravity of the privacy invasion involved in the requested disclosure, the Court stated:

> Disclosure of the requested lists would involve a release of each registrant's home address, *information that the individual may fervently wish to remain confidential or only selectively released.* One consequence of this disclosure is that a registrant will be subjected to unsolicited and possibly unwanted mail from Wine Hobby and perhaps offensive mail from others. Moreover, information concerning personal activities within the home, namely winemaking, is revealed by disclosure. Similarly, disclosure reveals information concerning the family status of the registrant, including the fact that he is not living alone and that he exercises family control or responsibility in the household.

502 F.2d at 137 (footnotes omitted) (emphasis added).

Plaintiff seeks to distinguish *Wine Hobby* by arguing that the instant case involves only names and addresses, not the disclosure of "intimate details" such as home wine making and status within the family. This distinction is unpersuasive. First, the *Wine Hobby* decision clearly rests primarily on the notion that "there are few things which pertain to an individual in which his privacy has traditionally been more respected than his own home." 502 F.2d at 136–137. Moreover, disclosure in the instant case will alert the world that the individuals listed are interested in obtaining valuable coins. For security reasons this is an item of information deserving as much protection as information relating to home wine making. The privacy interest at stake in the instant case is at least as important as the interest in *Wine Hobby.* More generally, the privacy interest at stake here is the same highly important interest responsible for unlisted telephone numbers and rented post office boxes, the desire to control the knowledge of one's personal location.

*The Effect of GSA's Own Regulations*

Plaintiff contends that the GSA's own regulations establish a stricter standard than Exemption 6 which must be met before the GSA can refuse to disclose information requested under the FOIA. This court notes at the outset that the FOIA specifically provides a standard of review applicable to the instant proceeding:

> On complaint, the district court of the United States in the district in which the complainant resides, or has his principal place of business, or in which the agency records are situated, or in the District of Columbia, has jurisdiction to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant. *In such a case the court shall determine the matter de novo,* and may examine the contents of such agency records in camera *to determine whether such records or any part thereof shall be withheld under any of the exemptions set forth in subsection (b) of this section, and the burden is on the agency to sustain its action.*

5 U.S.C. § 552(a)(4)(B) (emphasis added). The regulation relied on by the plaintiff reads in pertinent part:

The authority for non-disclosure will not be invoked unless there is a compelling reason to do so. In the absence of such compelling reason, records and other information will be disclosed although otherwise subject to exception.

41 C.F.R. § 105–60.104–2.

Thus HMG argues that GSA must demonstrate a "compelling reason" for non-disclosure of the Mailing List rather than the standard of review found in the FOIA, i. e. the burden of proving, in a *de novo* proceeding, that disclosure of the Mailing List would "constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). As a practical matter, this court is unable to discern a difference between a "clearly unwarranted invasion of personal privacy" and a "compelling reason" for nondisclosure. More importantly, however, this court is unwilling to accept the proposition that an agency can promulgate a regulation altering a congressionally required standard of review. While evidencing a commendable determination to disclose as much information as possible, the GSA regulation relied on by HMG cannot change the standard of review before this court. GSA reached an administrative conclusion that "compelling reasons" existed to apply Exemption 6, and did so. There is certainly an interest in seeing that administrative agencies comply with their own regulations, but Congress has specifically provided the standard by which the particular agency action at issue here shall be judged.

## CONCLUSION

Accordingly, this court has considered all the evidence and engaged in the balancing process described in the first part of this opinion. The court concludes that the government has sustained its burden of proving that the disclosure requested by plaintiff would be a "clearly unwarranted invasion of personal privacy." Plaintiff's motion for summary judgment is therefore denied. Defendant's motion for summary judgment is granted and the complaint in this action is dismissed with prejudice.