**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

---

**No. 10-1264**

---

CASA DE MARYLAND, INCORPORATED,

        Plaintiff - Appellee,

    v.

UNITED STATES DEPARTMENT OF HOMELAND SECURITY; UNITED STATES
INTERNAL REVENUE SERVICE,

        Defendants - Appellants.

---

Appeal from the United States District Court for the District of
Maryland, at Greenbelt.  Peter J. Messitte, Senior District
Judge.  (8:08-cv-03249-PJM)

---

Argued:  October 27, 2010        Decided:  January 31, 2011

---

Before TRAXLER, Chief Judge, DAVIS, Circuit Judge, and Damon J.
KEITH, Senior Circuit Judge of the United States Court of
Appeals for the Sixth Circuit, sitting by designation.

---

Affirmed by unpublished per curiam opinion.

---

**ARGUED:** Jeffrey A. Clair, UNITED STATES DEPARTMENT OF JUSTICE,
Washington, D.C., for Appellants.  Sebastian Gabriel Amar, CASA
DE MARYLAND, INCORPORATED, Hyattsville, Maryland, for Appellee.
**ON BRIEF:** Tony West, Assistant Attorney General, Leonard
Schaitman, UNITED STATES DEPARTMENT OF JUSTICE, Washington,
D.C.; Rod J. Rosenstein, United States Attorney, Baltimore,
Maryland, for Appellants.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

The United States Department of Homeland Security appeals from an order of the district court ordering the disclosure of certain information pursuant to the Freedom of Information Act ("FOIA"). See 5 U.S.C. § 552. We affirm.

On January 23, 2007, agents of the United States Immigration and Customs Enforcement Agency ("ICE") arrested 24 Latinos suspected of being in unlawful immigration status in a raid at a Baltimore-area 7-Eleven store where day laborers gathered. Non-Latino individuals seeking day labor were also on the premises, but agents neither questioned nor detained them. Believing that ICE agents targeted Latino males solely on the basis of their race, Appellee CASA de Maryland ("CASA"), a Latino community advocacy group, filed a complaint with ICE and requested an investigation of the incident.

The complaint was referred to ICE's Office of Professional Responsibility ("OPR") for an internal investigation into the racial profiling allegations. After OPR conducted its investigation,

> [a] report was prepared by an Agency Fact Finder. Cases that are referred to a Fact Finder for investigation are called "Administrative Inquiries." As such, they are purely internal reviews of an allegation of misconduct . . . [that] are provided to Agency managers for use in determining appropriate disciplinary action and programmatic changes, if needed. These reports are . . . generally not

3

> disclosed outside the Agency except through a FOIA
> request with appropriate redactions . . . .

J.A. 27. The report concluded that "the allegation that the civil rights of the individuals arrested at the 7-Eleven store on January 23, 2007, were violated is unsubstantiated." J.A. 109. The report included affidavits from ICE agents who participated in the raid; video surveillance recordings obtained from 7-Eleven and Baltimore Police; and a narrative of events based on interviews of the agents and documents reviewed by the Agency Fact Finder.

In September 2008, CASA sent ICE a formal FOIA request seeking records related to the January 2007 7-Eleven arrests or the investigation of that incident. FOIA provides that federal agencies shall "upon any request for records which . . . reasonably describes such records . . . make the records promptly available to any person," 5 U.S.C. § 552(a)(3)(A), unless a statutory exemption applies, see 5 U.S.C. § 552(b). In this case, ICE asserts that two privacy-based exemptions apply: Exemptions 6 and 7(C). Exemption 6 protects information contained in an agency's "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). Exemption 7(C) authorizes agencies to withhold "records or information compiled for law enforcement purposes,

4

but only to the extent that the production of such law enforcement records or information . . . could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C).

In response to CASA's FOIA request, ICE released a redacted copy of OPR's internal investigation report. Relying on FOIA Exemptions 6 and 7(C), ICE redacted from the report the names and initials of individuals, including ICE agents involved in the raid, deportation officers who were involved in subsequent removal proceedings, but did not participate in the operation, and various other agents identified in the report. Additionally, ICE redacted from the report the identity of the "Agency Fact Finder" who prepared the report, the identities of other agency employees involved in the internal investigation, and the identity of the 7-Eleven employee who provided the video surveillance tape. ICE justified withholding the names and identities of the various individuals on the basis that "[d]isclosure of such information would lead to their identification" and "could subject these individuals to unwanted contact by the media and others, and/or expose them to unreasonable annoyance, harassment, or threats of reprisal." J.A. 29. ICE claimed that "[t]he privacy interests of the individuals are substantial" and outweigh "the public interest in disclosure" because revealing the "personnel names and other

5

identifying information would not should light on how ICE carries out its statutory duties." J.A. 29-30.

CASA filed suit under FOIA asking the district court to order disclosure of, among other things, any documents, records and information related to the 7-Eleven raid that CASA had requested from ICE. See 5 U.S.C. § 552(a)(4)(B). In particular, CASA sought disclosure of OPR's report in unredacted form.

The government moved for summary judgment, arguing that the redacted names were statutorily exempt from disclosure because the disclosure of these names would constitute an unwarranted invasion of the personal privacy of the ICE agents and other individuals named in the report.

The district court denied the motion for summary judgment with respect to the names included in OPR's report and ordered that the "redacted information in the referenced documents must be disclosed." J.A. 436. With respect to both Exemption 6 and Exemption 7(C), the district court "balance[d] the privacy rights of the individuals [named in the report] versus the public interest[] in knowing the names." J.A. 427. The district court concluded that CASA came forward with sufficient facts to suggest that government impropriety occurred and that the public interest in such information outweighed the privacy interests asserted by ICE.

"The basic purpose of FOIA is to ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed." NLRB v. Robbins Tire & Rubber Co., 437 U.S. 214, 242 (1978). FOIA promotes a broad policy of transparency in government—"disclosure, not secrecy, is the dominant objective of the Act." Department of the Interior v. Klamath Water Users Protective Ass'n, 532 U.S. 1, 8 (2001). Nevertheless, although FOIA generally mandates disclosure of information contained in public records, it also "expressly recognizes that 'public disclosure is not always in the public interest,'" Spannaus v. United States Department of Justice, 813 F.2d 1285, 1288 (4th Cir. 1987) (quoting Baldrige v. Shapiro, 455 U.S. 345, 352 (1982)), as "legitimate governmental and private interests could be harmed by release of certain types of information," FBI v. Abramson, 456 U.S. 615, 621 (1982). To this end, FOIA specifies nine exemptions from its general disclosure scheme. See 5 U.S.C. § 552(b). Given the overarching disclosure policy, FOIA exemptions must be narrowly construed to favor disclosure. See Bowers v. United States Dep't of Justice, 930 F.2d 350, 354 (4th Cir. 1991). The burden of demonstrating that requested information falls under an exemption rests on the government. See 5 U.S.C. § 552(a)(4)(B);

7

City of Virginia Beach, Va. v. United States Dep't of Commerce, 995 F.2d 1247, 1252 (4th Cir. 1993).

For the application of FOIA Exemptions 6 and 7, the Supreme Court employs a balancing approach that weighs individual privacy interests against the public interest in disclosure. See United States Dep't of Justice v. Reporters Comm. for Freedom of the Press, 489 U.S. 749, 762 (1989); Department of the Air Force v. Rose, 425 U.S. 352, 373 (1976). Although both exemptions require courts to balance individual privacy and public interests, "Exemption 7(C)'s privacy language is broader than the comparable language in Exemption 6" in that "Exemption 6 requires that the invasion of privacy be 'clearly unwarranted,' a requirement omitted from the language of Exemption 7(C). Reporters Comm., 489 U.S. at 756. Thus, "although both exemptions require the court to engage in a similar balancing analysis, they 'differ in the magnitude of the public interest that is required to override the respective privacy interests protected by the exemptions.'" Lahr v. National Transp. Safety Bd., 569 F.3d 964, 974 (9th Cir. 2009) (quoting United States Dep't of Defense v. Federal Labor Relations Auth., 510 U.S. 487, 496 n.6 (1994)).

As noted above, a government agency may withhold FOIA information under Exemption 6 or 7(C) only if disclosure would constitute an "unwarranted invasion of personal privacy."

8

However, once a legitimate privacy interest is implicated, the burden shifts to the requester to (1) "show that the public interest sought to be advanced is a significant one, an interest more specific than having the information for its own sake," and (2) "show the information is likely to advance that interest." National Archives & Records Admin. v. Favish, 541 U.S. 157, 172 (2004).

The district court correctly determined that ICE identified a legitimate privacy interest. As we have explained:

> FBI agents, government employees, third-party suspects, and other third parties mentioned or interviewed in the course of the investigation have well-recognized and substantial privacy interests in the withheld information. Among other things, these individuals have a substantial interest in the nondisclosure of their identities and their connection with particular investigations because of the potential for future harassment, annoyance, or embarrassment.

Neely v. FBI, 208 F.3d 461, 464-65 (4th Cir. 2000).

Against this privacy interest, CASA asserts the public's interest in shedding light on improper Agency conduct. CASA faces more than a minimal obstacle to establish the right to disclosure:

> [W]here there is a privacy interest protected by Exemption 7(C) and the public interest being asserted is to show that responsible officials acted negligently or otherwise improperly in the performance of their duties, the requester must establish more than a bare suspicion in order to obtain disclosure. Rather, the requester must produce evidence that would

9

> warrant a belief by a reasonable person that the alleged Government impropriety might have occurred.

Favish, 541 U.S. at 174.

CASA submitted affidavits from thirteen of the arrestees which all suggested that government agents arrested them without first obtaining any information about their immigration status and ignored non-Latino day laborers. CASA also submitted the declarations of ICE agents given during removal proceedings for some of the arrestees indicating that arrests were made after the arrestees admitted being present or seeking work illegally. CASA asserted that these unredacted declarations differed markedly from the affidavits included in OPR's Administrative Investigation report. Additionally, the report contained statements from an ICE agent indicating that supervisory personnel suggested that he should not admit that the 7-Eleven raid was intentional: "[The supervisor] came into the . . . [o]ffice later in the afternoon, and asked me if we had stopped in the 7-11 parking lot for a break and a soda. I felt this was a half-truth. I was tired and did not wish to debate the situation . . . anymore, so I said sure. [The supervisor] said good, and reminded me again that we had stopped in for a drink." J.A. 272. The agent also indicated that he believed the operation was "close to being out of line with current service policy." J.A. 279.

10

Having reviewed the record, we agree with the district court that the public interest outweighs the privacy interest asserted by ICE in this case. Accordingly, we affirm the decision of the district court.

<u>AFFIRMED</u>